UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

N.K., ET AL.,

Plaintiffs,

- Against -

NEW YORK CITY DEPARTMENT OF EDUCATION, ET AL.,

Defendants.

25-cv-7782 (JGK)

Memorandum Opinion and Order

JOHN G. KOELTL, District Judge:

The plaintiffs, N.K. and O.P., individually and as parents and legal guardians of N.P., a nine-year-old student, bring this action against the New York City Department of Education ("DOE"), the Board of Education of the City School District of the City of New York, Chancellor Melissa Aviles-Ramos, in her official capacity, and the City of New York. See Am. Compl. ¶¶ 1–2, 41–60, ECF No. 5. The plaintiffs assert claims under the Individuals with Disabilities Education Improvement Act, 20 U.S.C. § 1400 et seq. ("IDEA"); its implementing regulations, 34 C.F.R. pt. 300 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794 et seq. ("Section 504"); 42 U.S.C. § 1983; and New York State law. Id. ¶¶ 121–69. The plaintiffs challenge portions of an Impartial Hearing Officer's ("IHO") December 18, 2024 Findings of Fact and Decision ("FOFD") and the subsequent decision of the State Review Officer ("SRO"), and allege that the DOE failed to implement N.P.'s pendency placement. Id. ¶¶ 20–24.

The defendants move to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the plaintiffs failed to exhaust their administrative remedies and failed to state a plausible claim. See ECF No. 16. For the reasons stated below, the defendants' motion is **granted**.

## I.

### A.

Congress enacted the IDEA to ensure that students with disabilities receive an education that adequately addresses their specific needs. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239 (2009). The IDEA provides that "[s]tates receiving federal funds [must] provide all children with disabilities with a FAPE,"[1] that is, a "Free Appropriate Public Education," which includes "special education and related services tailored to meet the unique needs of a particular child." Mr. P v. W. Hartford Bd. of Educ., 885 F.3d 735, 741 (2d Cir. 2018) (citing 20 U.S.C. §§ 1401(9), 1412(a)(1)(A)).

New York's IDEA regulations closely track the IDEA statute. See P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 408 (S.D.N.Y. 2017); see also N.Y. Educ. Law §§ 4401 to 4410-b. In New York, Individualized Education Programs ("IEPs") that outline how a FAPE will be provided are formulated annually by a local Committee on Special Education ("CSE"), consisting of school board representatives, educators, clinicians, and parents. N.Y. Educ.

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

Law § 4402; see also Hardison v. Bd. of Educ., 773 F.3d 372, 376 (2d Cir. 2014). In formulating IEPs, the CSE must evaluate the student's educational status and areas of need to determine the appropriate educational program. N.Y. Educ. Law § 4402; R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 175 (2d Cir. 2012). Through the IEP, the CSE outlines the student's goals for the upcoming school year and makes recommendations designed to help the student achieve those goals and make educational progress. 20 U.S.C. § 1414(d). "A school district meets its obligations to provide a FAPE by creating an IEP that is developed in compliance with the IDEA's procedural and substantive requirements." N.B. v. N.Y.C. Dep't of Educ., 711 F. App'x 29, 32 (2d Cir. 2017) (summary order). It is important to note that "[w]hat the statute guarantees is an appropriate education, not one that provides everything that might be thought desirable by loving parents." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 132 (2d Cir. 1998).

**B.**

In addition to the FAPE framework, the "IDEA incorporates some but not all state law concerning special education." Bay Shore Union Free Sch. Dist. v. Kain, 485 F.3d 730, 734 (2d Cir. 2007).

For example, the IDEA incorporates a state special-education system for children with disabilities who are parentally placed in private schools. See 20 U.S.C. § 1412(a)(10)(A); 34 C.F.R. §§ 300.131–.139; E.T. v. Bd. of Educ., No. 11-cv-5510, 2012 WL 5936537, at *11 (S.D.N.Y. Nov. 26, 2012). In New York, that plan is known as an Individualized Education Services Program

("IESPs"). E.T., 2012 WL 5936537, at *11; N.Y. Educ. Law § 3602-c(2)(b). Under the IESP framework, parents may enroll their child in a private school at their own expense and, instead of seeking tuition reimbursement, request that the school district provide only the special education and related services recommended for the child. See 20 U.S.C. § 1412(a)(10)(A); 34 C.F.R. §§ 300.137–.139. States must allocate a proportionate share of federal IDEA funds to provide those services to parentally placed private-school students. J.S. v. Scarsdale Union Free Sch. Dist., 826 F. Supp. 2d 635, 665 (S.D.N.Y. 2011). A dispute arising solely from a student's IESP does not itself present an independent federal question sufficient to support federal-question jurisdiction. See Manos v. N.Y.C. Dep't of Educ., No. 25-cv-1101, 2026 WL 587792, at *5 (S.D.N.Y. Mar. 3, 2026); Kain, 485 F.3d at 734 ("[A]ssuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction.").

**C.**

Should a student's parent disagree with the CSE's recommendation or "any matter relating to the identification, evaluation or educational placement of the student or the provision of a [FAPE] to the student[,]" the parent is entitled to submit a Due Process Complaint ("DPC"), which is heard by an IHO. N.Y. Educ. Law § 4404(1); see also 20 U.S.C. § 1415(b)(6)(A). Moreover, if a school district fails to provide a FAPE to a child with disabilities, the child's parents may, at their own financial risk, refuse the improper placement, enroll the child in an appropriate private school, and retroactively seek

reimbursement from the state for the cost of the private school by bringing a DPC. See Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985). The Supreme Court has established the three-pronged Burlington/Carter test to determine eligibility for reimbursement, which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities. C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 73 (2d Cir. 2014); see also Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12–13 (1993); Burlington, 471 U.S. at 370.

A parent or school district may appeal an adverse decision by the IHO to the appropriate state agency, resulting in a decision by an SRO. See 20 U.S.C. § 1415(g); N.Y. Educ. Law § 4404(2). Following the SRO's decision, either party may file a civil action in federal or state court challenging the administrative decision. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

## II.

Unless otherwise noted, the following facts are taken from the amended complaint and are accepted as true for purposes of the current motion.

N.P. is a nine-year-old student with a speech and language impairment and is therefore eligible to receive special education and related services. Am. Compl. ¶ 2. At age five, N.P. attended Public School 247 ("P.S. 247"). Id. ¶ 4.

As a preschooler with a disability, N.P. was placed in the DOE's Integrated Co-Teaching ("ICT") class and was recommended to receive related services, including occupational therapy ("OT") and speech and language therapy ("SLT"). Id. N.P. attended the ICT class at P.S. 247 for two years: kindergarten during the 2021–2022 school year and first grade during the 2022–2023 school year. Id. ¶ 5. By the end of the 2022–2023 school year, N.P. allegedly could not read and lacked sight-symbol correspondence and, as a result, was recommended to repeat first grade during the 2023–2024 school year. Id.

**A. 2023–2024 School Year**

N.K. and O.P. decided to withdraw N.P. from P.S. 247 and homeschool N.P. Id. ¶ 6. On September 8, 2023, the CSE met and developed an IESP for N.P., which included Special Education Teacher Support Services ("SETSS"). IESP 11, ECF No. 5-2. On September 15, 2023, N.K. and O.P. filed a DPC challenging the DOE's recommended program for the 2023–2024 school year. See FOFD 1, ECF No. 5-4.

On May 24, 2024, IHO Kevin McGrath issued the FOFD and found that: (1) the DOE denied N.P. a FAPE for the 2023–2024 school year; (2) the compensatory-education relief sought by N.K. and O.P. was appropriate; and (3) N.P. should receive services, including SETSS, SLT, and OT, for a 12-month school year for 2023–2024.[2] Id. at 3, 16. The DOE did not appeal this FOFD. Am. Compl. ¶ 7.

[2] Specifically the IHO ordered that N.P. receive 20 hours of SETTS per week, a 54-hour bank of SLT, and a 54-hour bank of OT. FOFD 16.

## B. 2024–2025 School Year

On March 18, 2024, the CSE reconvened and developed an IESP for N.P. for the 2024–2025 school year, relying on the findings of a neuropsychological evaluation by an independent evaluator obtained by N.K. See SRO Decision 3–4, ECF No. 5-8. The March 18, 2024, IESP provided that N.P. would receive seven periods of SETTS per week, three 30-minute session of group, speech-language therapy per week, and two 30-minute sessions of OT per week. Id.

N.K. was dissatisfied with the recommended program. On May 30, 2024, N.K. notified the DOE of her intent to place N.P. in home instruction. Id. at 4. Then, on June 17, 2024, N.K. notified the DOE of her intent to place N.P. in a private program instead, asserting that the DOE had failed to convene a CSE meeting to develop an appropriate educational program for N.P. Id. On June 30, 2024, N.K. contracted with Dyslexia Associates, Inc., for the delivery of SETSS to N.P. for a 12-month school year during the 2024–2025 school year. Id. On August 2, 2024, N.K. filed a second DPC, alleging that the DOE failed to offer N.P. a FAPE for the 2024–2025 school year and seeking reimbursement for privately obtained SETSS, SLT, and OT for the 12-month 2024–2025 school year. Id. at 5.

### 1. IHO Order and Findings

On November 13, 2024, the IHO issued an Order on Pendency, finding that N.P. was entitled, during the pendency of the administrative proceeding, to the services awarded in the May 2024 FOFD, rather than the services

recommended in the IESP dated March 18, 2024. Order on Pendency 7, ECF No. 5-6.

In the subsequent FOFD dated December 18, 2024, the IHO determined that the DOE failed to provide N.P. with a FAPE because the hearing record did not adequately support the appropriateness of the March 2024 IESP and because the DOE failed to implement the recommended services. SRO Decision 5.

However, the IHO also determined that N.P. was not entitled to an IEP for the 2024–2025 school year and was only entitled to equitable services through an IESP. Id. The IHO also found that N.K. failed to establish the appropriateness of the unilaterally obtained services, including SETSS, because the hearing record contained insufficient evidence regarding the education or programming N.P. actually received through home instruction. Id. at 5–6. The IHO further found that N.P. was not entitled to special education and related services on a 12-month basis because N.K. had not requested 12-month services in her 10-day notice letter and there was no evidence that N.P. experienced substantial regression during the summer months. Id. at 6.

Moreover, the IHO found that, even if N.K. had established the appropriateness of the unilateral placement, equitable considerations would warrant a reduction in the relief awarded because: (1) the frequency of the requested services was excessive in light of evidence that N.P. was making progress with services provided at a lower frequency and for less time; and

(2) N.K. failed to provide the DOE with notice of her intent to implement a home-instruction program. Id.

### 2. SRO Decision

N.K. appealed the December 18, 2024 FOFD, arguing that: (1) the IHO should have concluded the analysis by directing the DOE to continue N.P.'s pendency services until the CSE recommended an appropriate program or until the end of the 2024–2025 school year; (2) the IHO erred in requiring her to prove the appropriateness of the services provided to N.P.; and (3) N.K. had established the appropriateness of the unilaterally obtained services in any event. Id. at 6–7. She requested reversal of the portions of the IHO's decision adverse to her and an order continuing N.P.'s pendency program. Id. at 7.

The DOE cross-appealed, arguing that: (1) the IHO erred in finding that N.P. was entitled to pendency services based on the May 2024 FOFD because that decision awarded compensatory services for the prior 2023–2024 school year rather than prescribing services for 2024–2025 school year prospectively; (2) even if pendency services were warranted, those services should continue only for the duration of the administrative proceeding; (3) the IHO correctly found that N.K. failed to establish the appropriateness of the unilaterally obtained services; and (4) equitable considerations should bar all relief rather than merely reduce the amount awarded. Id.

The parties did not appeal the IHO's findings that the DOE denied N.P. a FAPE or that N.P. was not entitled to an IEP for the 2024–2025 school year. Id. at 9.

With respect to pendency, SRO Steven Krolak concluded that the IHO's November 13, 2024 Order on Pendency erroneously relied on the unappealed May 2024 FOFD. Id. at 11. Because the May 2024 FOFD awarded compensatory relief for the denial of a FAPE during the 2023–2024 school year, rather than reflecting an agreement between the parties to continue N.P.'s educational program prospectively during the 2024–2025 school year, the SRO concluded that N.P.'s pendency placement was governed by the March 18, 2024 IESP and should continue only for the duration of the administrative proceeding. Id. at 10–13.

As to the appropriateness of the unilaterally obtained services, the SRO agreed with the IHO that the parents "bear the burden of demonstrating that their private placement was appropriate, even if the IEP was inappropriate." Id. at 15 (citing Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 112 (2d Cir. 2007)). The SRO further affirmed the IHO's finding that the hearing record contained insufficient evidence regarding the home instruction provided to N.P. or how the unilaterally obtained SETSS supported N.P.'s general education program. Id. at 22. The SRO therefore concluded that N.K. failed to meet her burden of establishing the appropriateness of the unilaterally obtained services for N.P. Id.

The SRO did not address the DOE's argument that equitable considerations bar all relief for N.P. Id.

## III.

N.K. and O.P. filed the Complaint in this Court on September 18, 2025, and filed the Amended Complaint on October 14, 2025. See ECF Nos. 1, 5. The Amended Complaint asserts seventeen claims, purportedly pursuant to both state and federal law, many of which are duplicative. See Am. Compl. ¶¶ 121–69. In substance, the plaintiffs allege that: (1) the DOE failed to consider the findings of a neuropsychological evaluation obtained by N.K. from an independent evaluator when developing N.P.'s IESP for the 2024–2025 school year; (2) the DOE failed to comply with procedural requirements, including those governing notice and the composition of the CSE, when developing N.P.'s IESP for the 2024–2025 school year; (3) the DOE failed to implement the services awarded in the May 24, 2024 FOFD or required by the March 18, 2024 IESP; (4) the DOE failed to provide pendency services during the 2024–2025 administrative proceedings; (5) the DOE improperly placed on N.K. the burden of proving the appropriateness of the IESP during the administrative proceedings; and (6) the services unilaterally obtained by N.K. were appropriate for N.P. Id.

The defendants move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). See ECF No. 15. The DOE argues that the Court lacks subject-matter jurisdiction because the

plaintiffs' claims concern only N.P.'s IESP and do not contend that N.P. was entitled to an IEP. See Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 7, ECF No. 16. The DOE further argues that the plaintiffs incorrectly contend that the DOE bears the burden of establishing the appropriateness of the unilaterally obtained services and that the SRO erred in determining that N.P.'s pendency placement was governed by the March 2024 IESP rather than the May 2024 FOFD. Id. at 7–9.

**A.**

When presented with a motion to dismiss under Rule 12(b)(1) and a motion to dismiss on other grounds, the Court considers the question of subject-matter jurisdiction first. See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990).

"A case is properly dismissed . . . under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). To prevail against a motion to dismiss for lack of subject-matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Id. In considering such a motion, the Court generally must accept as true the material factual allegations in the complaint. See J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004). However, the Court does not draw all reasonable inferences in the plaintiff's favor. Id. Indeed, where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and

testimony, to determine whether jurisdiction exists. See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

Courts in this District have repeatedly held that "[i]t is New York law—not the IDEA—that ensures that students with IESPs are entitled to equivalent rights as students with IEPs." Manos, 2026 WL 587792, at *6; see also Law Off. of Philippe J. Gerschel v. N.Y.C. Dep't of Educ., No. 24-cv-6303, 2025 WL 466973, at *6 (S.D.N.Y. Feb. 1, 2025), report and recommendation adopted, 2025 WL 2778165 (S.D.N.Y. Sep. 30, 2025); Chera v. N.Y.C. Dep't of Educ., No. 25-cv-1710, 2026 WL 947995, at *4 (S.D.N.Y. Apr. 8, 2026). Those decisions rely on Bay Shore Union Free School District v. Kain, in which the Court of Appeals for the Second Circuit held that a federal district court lacked subject-matter jurisdiction to hear a school district's lawsuit challenging an SRO's determination that the school district was obligated to provide a one-to-one aid to a student in a private school. The Court of Appeals noted that the provision of the one-to-one aid was not required by federal law. The Court of Appeals also concluded that even "assuming that IDEA incorporates the relevant New York Education Law, this does not provide an independent federal question that would sustain the court's jurisdiction." 485 F.3d at 734. The Court of Appeals explained that federal-question jurisdiction was lacking because resolution of the dispute did not "turn on the interpretation of federal law," but instead depended "entirely on state-law issue[s]." Id.; see Manos, 2026 WL 587792, at *5; Chera, 2026 WL 947995, at *4.

In this case, all of the plaintiffs' claims arise from New York's IESP framework. In substance, the plaintiffs challenge whether the CSE considered the independent evaluation and complied with applicable procedural requirements in developing N.P.'s IESP, whether the DOE properly implemented the IESP, whether the SETSS unilaterally obtained by N.K.—a service included in N.P.'s IESP—was appropriate for N.P., and whether the pendency services based on N.P.'s March 18, 2024 IESP were proper. See Am. Compl. ¶¶ 121–69. The plaintiffs did not appeal to the SRO the determinations that N.P. was not entitled to an IEP for the 2024–2025 school year and that the DOE denied N.P. a FAPE. See SRO Decision 9. Nor do the plaintiffs challenge those determinations in the Amended Complaint.

The plaintiffs respond that their claims under Section 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983 independently confer subject-matter jurisdiction. Pls.' Opp'n 5–6, ECF No. 19. However, those claims merely restate the same allegations underlying the plaintiffs' state-law claims concerning N.P.'s IESP and then recite the elements of a Rehabilitation Act or § 1983 claim. See Am. Compl. ¶¶ 151–67. This is insufficient to establish federal-question jurisdiction. See Arbaugh v. Y & H Corp., 546 U.S. 500, 513 n.10 (2006) ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, i.e., if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous."). The plaintiffs do not explain why they have a colorable claim under the Rehabilitation

Act, 29 U.S.C. § 794 et seq., which prohibits discrimination based on disability in federal grants and programs. Nor do the plaintiffs explain the basis for a claim under 42 U.S.C. § 1983, which prohibits the denial under color of state law of any right secured by the Constitution or federal law. Rather, the plaintiffs complain about the deprivation of benefits provided by New York State law.

The plaintiffs also argue that their claims arise under the IDEA because they allege that N.P. was entitled to a FAPE and that the DOE denied a FAPE to N.P. Pls.' Opp'n 12–14. But the plaintiffs do not contend that N.P. was harmed because he was not provided with an IEP; rather, they contend that N.P. was entitled to particular services during his home-instruction program—a parentally selected private educational placement governed by an IESP. See Am. Compl. ¶¶ 121–69. In any event, the plaintiffs may not now argue that N.P. was entitled to an IEP because they failed to raise that issue before the SRO. See, e.g., Cornett v. Banks, No. 23-cv-6893, 2025 WL 712799, at *6 (S.D.N.Y. Mar. 5, 2025) ("[T]hese arguments were not raised before the SRO, and Plaintiff has thus waived her right to review in this Court."), aff'd sub nom. Cornett v. Samuels, No. 25-830, 2026 WL 456257 (2d Cir. Feb. 18, 2026). Accordingly, the Amended Complaint does not present a claim that turns on the interpretation or application of the IDEA, and the plaintiffs may not introduce such a claim at this stage.

Finally, the plaintiffs argue that the defendants misread the line of cases concluding that IESP-related disputes do not independently support

federal-question jurisdiction. Pls.' Opp'n 9–14. According to the plaintiffs, Kain is distinguishable because the parties in that case conceded that the IDEA did not require the specific relief sought, while Gerschel is distinguishable because it involved a dispute over attorneys' fees arising from IESP claims. Pls.' Opp'n 9–14.

Those are distinctions without a difference. Kain established the broader principle that "a federal court may not exercise jurisdiction over a civil action brought under § 1415(i)(2)(A) if the claims asserted turn exclusively on matters of state law and diversity of citizenship is absent." 485 F.3d at 736. Consistent with that principle, courts in this District have repeatedly held, across differing factual contexts, that rights arising from IESPs "are granted by state law and not the IDEA." Gerschel, 2025 WL 466973, at *5; see also Manos, 2026 WL 587792, at *5–6; Chera, 2026 WL 947995, at *4.

In this case, the Amended Complaint concerns only the services provided to N.P. during his home-instruction program for the 2024–2025 school year—that is, a parentally selected private educational program properly governed by an IESP. Because the plaintiffs waived any argument that N.P. was entitled to an IEP, resolution of this action does not turn on the IDEA. Accordingly, the Amended Complaint does not present a federal question sufficient to support federal-question jurisdiction. The defendants' motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is therefore **granted**.

**B.**

Although the Court lacks subject-matter jurisdiction to adjudicate the plaintiffs' claims, for the sake of completeness, the Court turns briefly to the merits of the plaintiffs' arguments.

First, the plaintiffs claim that the SRO improperly upheld the IHO's determination that the plaintiffs bore the burden of proving the appropriateness of the unilaterally obtained SETTS. As the defendants point out, that argument is incorrect. By analogy to the Burlington/Carter framework for the reimbursement of claims by parents who placed their children in private schools, the parents bear the burden at the second step of the framework to show that the private services were appropriate. See C.L. v. Scarsdale Union Free Sch. Dist., 744 F.3d 826, 836 (2d Cir. 2014) ("The parents bear the burden of showing that the private placement they selected was appropriate for the child and that the equities weigh in their favor.").[3]

Second, the plaintiffs claim that the SRO erred in concluding that N.P.'s pendency services should be governed by the March 18, 2024 IESP rather than the May 24, 2024 FOFD, which awarded compensatory relief for the 2023–2024 school year. This argument is without merit. The May 24, 2024 FOFD addressed N.K.'s request for compensatory education arising from the denial of appropriate services during the 2023–2024 school year; it

[3] The plaintiffs contend that, even though they bore the burden of proof, they established that the unilaterally obtained SETTS was appropriate for N.P. The defendants do not address this argument in either their opening memorandum or their reply brief.

did not reflect a finding regarding the services that N.P. should receive prospectively. See May 24, 2024 FOFD 14. Moreover, the FOFD awarded relief based on a retrospective assessment of N.P.'s needs and progress during the 2023–2024 school year, whereas the March 18, 2024 IESP prospectively prescribed the services to be provided to N.P. going forward. SRO Decision 3–4. Accordingly, the SRO correctly concluded that N.P.'s pendency services during the administrative proceeding should be based on the March 18, 2024 IESP rather than the May 24, 2024 FOFD.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted** and the amended complaint is **dismissed without prejudice** because the Court lacks jurisdiction to consider these claims. The Clerk is respectfully directed to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**July 24, 2026**

**John G. Koeltl**
**United States District Judge**